**DESMOND HODGE,**

    **Plaintiff,**

-vs-              **Case No. 6:09-cv-1059-Orl-19DAB**

**ORLANDO UTILITIES COMMISSION,**
**BAKER'S TRANSPORT SERVICE OF**
**LAKELAND, INC., DAVID POPE,**

    **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss Complaint (Count IV) with Prejudice and Memorandum of Law in Support by Defendant David Pope (Doc. No. 13, filed July 20, 2009); and

2. Response to Motion to Dismiss by Plaintiff Desmond Hodge (Doc. No. 19, filed July 31, 2009).

## Background

Plaintiff Desmond Hodge ("Hodge") filed a four-count complaint against Defendants Orlando Utilities Commission ("OUC"), Baker's Transport Service of Lakeland, Inc. ("Baker's Transport"), and David Pope ("Pope"). (Doc. No. 1, filed June 19, 2009). Plaintiff alleges that on or about June 6, 2007, Baker's Transport, a contractor for OUC, hired Hodge to provide transportation services to OUC at its facilities. (*Id.* ¶ 14.) Hodge further alleges that on or about July 25, 2007, Defendant Pope, a Safety Supervisor and employee of OUC, confronted Hodge without cause or justification, made racially derogatory statements to Hodge "for the purpose of

attempting to shame or berate" him, and caused him to be escorted from OUC's facilities by security. (*Id.* ¶¶ 15, 17, 18.) Thereafter, "the supervisors and management at OUC" notified Baker's Transport that Hodge was no longer permitted to work at OUC's facilities. (*Id.* ¶ 19.) Baker's Transport later terminated Hodge's employment. (*Id.* ¶ 28.)

Count IV incorporates by reference paragraphs 1-33 of the Complaint and alleges that Defendant Pope intentionally interfered with "Plaintiff's contract"[1] by intentionally and maliciously making "false statements regarding Plaintiff's work performance."[2] (*Id.* ¶ 65.) Plaintiff seeks compensatory damages for economic and emotional distress. (*Id.* ¶ 66.) In response, Defendant Pope moved to dismiss Count IV pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 13 at 2.) Pope offers two arguments in support of dismissal. First, he argues that Hodge failed to allege in the Complaint any facts pertaining to two essential elements of tortious interference with a contract, specifically Pope's knowledge of a contract between Hodge and Baker's Transport and Pope's intentional procurement of a breach of that contract. (*Id.* ¶¶ 4, 9.) Second, Pope argues that

---

[1] The Complaint is imprecisely pled and leaves much to be desired. For instance, it is unclear to which contract "Plaintiff's contract" refers. (Doc. 1 ¶¶ 65, 66.) However, the context indicates that "Plaintiff's contract" plausibly refers to Hodge's employment contract with Baker's Transport. (*See* Doc. 1 ¶ 65 ("the contract between Plaintiff and Defendant Baker's Transport"); *id.* ("false statements concerning Plaintiff's work performance").) It taxes the time of the Court and unnecessarily drives up litigation expenses when vague terms must be decoded merely to grasp the gravamen of the Complaint. *See generally* Fed. R. Civ. P. 8(e) (requiring pleadings to be construed so as to do justice); Fed. R. Civ. P. 11(b)(1) (authorizing the Court to sanction attorneys for pleadings which needlessly delay or increase the cost of litigation).

[2] Plaintiff's counsel certified that this factual contention currently has evidentiary support by signing the Complaint and not identifying this claim as requiring further investigation or discovery for evidentiary support. Fed. R. Civ. P. 11(b)(3). However, the Complaint provides no detail about the content of Pope's false statements or who knew about such statements.

he cannot be liable for tortious interference with a contract[3] as a matter of law because Hodge's employment contract with Baker's Transport was terminable at will. (*Id.* ¶¶ 10-11.)

**Standard of Review**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[3] The parties inconsistently style the tort at issue. (*See* Doc. No. 1 at 11 ("intentional interference with a contract"); *id.* ¶ 63 ("tortious intentional interference with a contract"); Doc. No. 13 at 4 ("tortious interference with a contract"); Doc. No. 19 at 1 ("intentional interference with contract"); *id.* at 4 ("tortious interference with a contract").) However, each name refers to the same underlying tort. *See Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2002) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)) (listing the elements of tortious interference with a contract); *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th DCA 1999) (listing the elements of intentional interference with a contract); *see also Cent. States, Se. & Sw. v. Fla. Soc. of Pathologists*, 824 So. 2d 935, 940 (Fla. 5th DCA 2002) (noting that tortious interference with a contract and tortious interference with a business relationship are essentially the same). For consistency the court shall use "tortious interference with a contract" in this order.

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

**I. Legal Sufficiency of the Complaint**

The facts pled must plausibly establish each element of tortious interference with a contract. *See Iqbal*, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"(quoting *Twombly*, 550 U.S. at 570)). As the parties correctly point out, two essential elements of tortious interference with a contract are knowledge of the contractual relationship by the defendant and intentional and unjustified interference with the contract by the defendant. *Tamiami Trail Tours,*

*Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). The element of intentional and unjustified interference requires proof both that the interferor intended to interfere with a contract and that the interferor's interference proximately caused a breach of the contract. *See Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So.2d 810, 814 (Fla. 2d DCA 2002) ("[W]ithin these elements is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages. In considering the element of causation, Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship.") (internal citations omitted); *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th DCA 1999) ("[I]n order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract by influencing, inducing or coercing one of the parties to . . . breach the contract, thereby causing injury to the other party." (quoting *Cedar Hills Prop. Corp. v. E. Fed. Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991)); *id.* ("[I]n an action for procuring the breach of a contract, the defendant may not be held liable where it is found that the breach by the party to the contract rather then the persuasion by the defendant was the proximate cause of the plaintiff's damage." (quoting 45 Am. Jur. 2d *Interference* § 10 (1999)). Therefore, Plaintiff must plead, *inter alia*, facts which plausibly show that (1) Defendant Pope knew of Hodge's employment contract with Baker's Transport; (2) Pope intended to interfere with the contract; and (3) Pope's interference proximately caused Baker's Transport to terminate Hodge's employment. *Iqbal*, 129 S. Ct. at 1949; *Chicago Title Ins. Co.*, 832 So.2d at 814; *Farah*, 740 So. 2d at 561.

### A. Knowledge of the Contract by Defendant Pope

Plaintiff Hodge argues that the circumstances leading to Defendant Pope's confrontation with him plausibly establish that Pope knew of Hodge's employment contract with Baker's Transport. (Doc. No. 19 at 3.) As to this confrontation, Hodge alleges that Baker's Transport was a contractor for OUC, that Hodge was employed by Baker's Transport, that Baker's Transport assigned Hodge to work at OUC facilities, that Pope was an OUC supervisor, that Pope confronted Hodge without justification, that Pope made racially derogatory statements to Hodge on the OUC facility, and that Pope caused security to eject Hodge from the OUC facility. (Doc. No. 1 ¶¶ 12-19.) However, these facts by themselves do not permit an inference that Defendant Pope knew of Hodge's employment contract with Baker's Transport. *See Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

But Hodge in addition alleges that Pope made false statements regarding Hodge's work performance for the purpose of interfering with Hodge's employment contract with Baker's Transport. (*Id.* ¶ 65.) Because it is alleged that Pope made such statements for the purpose of interfering with Hodge's employment contract with Baker's Transport, it must be inferred from Plaintiff's allegations that Pope knew that Hodge had an employment contract with Baker's Transport. *See Iqbal*, 129 S. Ct. at 1949-50 (directing courts to make reasonable inferences in the context of the facts pled). Based on this context-specific inference, the Complaint asserts facts which show Defendant Pope had knowledge of Hodge's employment contract with Baker's Transport.

### B. Intent to Interfere with the Contract by Pope

Plaintiff Hodge alleges that Defendant Pope intentionally and maliciously made false statements regarding his work performance. (*Id.* ¶ 65.) Because there is no legitimate business purpose for intentionally making false statements about another's work performance, Plaintiff's allegations that Defendant Pope intentionally made false statements concerning his work performance permit an inference that Pope intended to interfere with Hodge's employment contract with Baker's Transport. *See Iqbal*, 129 S. Ct. at 1949-50 (directing courts to make reasonable inferences in the context of the facts pled). Based on this context-specific inference, the Complaint asserts facts which plausibly show Pope's intent to interfere with Hodge's employment contract with Baker's Transport.

### C. Interference by Defendant Pope Proximately Causing Termination

Plaintiff Hodge alleges that Defendant Pope intentionally and maliciously made false statements regarding Hodge's work performance for the purpose of interfering with his employment contract with Baker's Transport. (*Id.* ¶ 65.) However, Plaintiff Hodge does not allege the specific content of Pope's false statements concerning Hodge's work performance or to whom such false statements were made. Without such details, no inference can be drawn as to whether Defendant Pope's false statements concerning Hodge's work performance or some other circumstances proximately caused the termination of Hodge's employment contract. Thus, Plaintiff Hodge's allegation that Pope made false statements concerning his work performance, without more, fails to plausibly establish that Pope proximately caused the termination of Hodge's employment contract with Baker's Transport.

Plaintiff also alleges that the "supervisors and management at OUC notified Baker's Transport that Plaintiff would no longer be allowed to work at OUC facilities" and that Baker's Transport terminated Hodge because OUC complained to Baker's Transport. (*Id.* ¶¶ 19, 28.) Notably, Plaintiff does not allege that Pope was among the OUC supervisors and management that told Baker's Transport that Hodge was barred from working at OUC facilities. (*Cf. id.* ¶ 15 (merely alleging that Defendant Pope was employed by OUC as a safety supervisor).) Similarly, Plaintiff does not allege that OUC supervisors and management knew about Pope's false statements concerning Hodge's work performance before they contacted Baker's Transport.

## II. Tortious Interference with an At-Will Employment Contract

The parties dispute whether tortious interference with an at-will employment contract is actionable. Generally, tortious interference with an at-will employment contract is not actionable because a contracting party's expectancy in continuing a merely at-will employment relationship is outweighed by the interferer's interest in securing a business advantage and the public policy of free enterprise. *Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So. 2d 252, 255 (Fla. 3d DCA 1993); *Heavener, Ogier Servs., Inc. v. R. W. Fla. Region, Inc.*, 418 So. 2d 1074, 1076-77 (Fla. 5th DCA 1982). However, tortious interference with an at-will employment contract is actionable where the interferer's interest is "purely malicious and not coupled with any legitimate competitive economic interest," because the interfered's expectancy in continuing an at-will employment relationship outweighs the interferer's completely harmful motives. *Heavener*, 418 So. 2d at 1077.

Although the parties argue that Hodge's employment with Baker's Transport was at will, the Court finds no such assertion in the Complaint. (*Compare* Doc. No. 1 ¶¶ 11, 27, 28, 31, 39, 61, 62,

65, 66 (referencing Hodge's "business relationship," "contract," and "employment contract"[4] with Baker's Transport, but not referencing whether such employment was at will), *with* Doc. No. 13 at 4 (presuming that Hodge's employment was at will), *and* Doc. No. 19 at 4 (same).)  Regardless of whether Plaintiff Hodge's employment was at will,[5] he may still claim tortious interference by Defendant Pope with the contract between Plaintiff and Baker's Transport so long as Pope's interest in interfering with such contract was "purely malicious and not coupled with any legitimate competitive economic interest."  *Heavener*, 418 So. 2d at 1077.

The Complaint alleges facts that plausibly establish a purely malicious interest by Defendant Pope devoid of any legitimate competitive economic interest.  *Iqbal*, 129 S. Ct. at 1949; *Heavener*, 418 So. 2d at 1077.  Plaintiff alleges that Pope intentionally and maliciously made false statements regarding Plaintiff's work performance.  (Doc. No. 1 ¶ 65.)   Because malice is an element of the cause of action, an allegation of malice by itself cannot establish a purely malicious interest by Defendant Pope devoid of any legitimate competitive economic interest.  *See Iqbal*, 129 S. Ct. at 1949  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *id.* at 1954 (noting that while malice may be pled generally pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the facts pled still must plausibly establish malice).  However, a purely malicious interest by Defendant Pope devoid of any legitimate competitive economic interest is plausibly established by the assertion that Pope intentionally made false statements concerning Plaintiff's work performance.  (Doc. No. 1 ¶ 65.)  Intentionally false

---

[4]  This is yet another example of the imprecise pleading discussed *supra* note 1.

[5]  When considering a motion to dismiss a complaint for failure to state a cause of action, the Court must limit its consideration to the pleadings within the four corners of the complaint and exhibits attached thereto.  *Tellabs, Inc.*, 551 U.S. at 323.

statements by Pope permit an inference of malice because they serve no legitimate purpose. *See Iqbal*, 129 S. Ct. at 1949-50 (directing courts to make reasonable inferences in the context of the facts pled). A purely malicious interest by Defendant Pope devoid of any legitimate competitive economic interest is also asserted by Plaintiff's allegation that Pope confronted him without cause or justification and made racially derogatory statements "for the purpose of attempting to shame or berate" him. (Doc. No. 1 ¶¶ 15, 18.) Like intentionally false statements concerning Plaintiff's work performance, racially derogatory statements concerning Plaintiff serve no legitimate purpose. Based on these context-specific inferences, the Complaint contains facts which plausibly allege that Pope possessed a purely malicious interest devoid of any legitimate competitive economic interest in tortiously interfering with Plaintiff's employment contract with Baker's Transport.[6]

## Conclusion

Based on the foregoing, the Motion to Dismiss Complaint (Count IV) with Prejudice and Memorandum of Law in Support by Defendant David Pope (Doc. No. 13, filed July 20, 2009) is **GRANTED in part and DENIED in part**:

1. Count IV is **DISMISSED without prejudice.**
2. Plaintiff has leave to file an Amended Complaint that comports with this Order and states a claim upon which relief may be granted within eleven (11) days from the date of this Order. The failure to comply with the directions in this Order may result

---

[6] But as discussed above, the Complaint as a whole does not state a claim against Defendant Pope for tortious interference with Plaintiff's employment contract with Baker's Transport upon which relief can be granted because no allegations plausibly establish that Pope proximately caused the termination of Hodge's employment.

in dismissal of this case as to Defendant Pope with prejudice and without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 28, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record