# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DESMOND HODGE,**

    **Plaintiff,**

-vs-                              Case No. 6:09-cv-1059-Orl-19DAB

**ORLANDO UTILITIES COMMISSION, DEDICATED TRANSPORT, LLC d/b/a BAKER'S TRANSPORT SERVICE OF LAKELAND, INC., DAVID POPE,**

    **Defendants.**

## ORDER

This case comes before the Court on the following:

1. Motion to Dismiss Complaint (sic) Count IV of Plaintiff's Complaint and Memorandum of Law in Support by Defendant David Pope (Doc. No. 35, filed Sept. 17, 2009);

2. Response to David Pope's Motion to Dismiss Count IV of Amended Complaint by Plaintiff Desmond Hodge (Doc. No. 37, filed Sept. 30, 2009);

3. Motion to Dismiss Count IV of Plaintiff's Amended Complaint and Memorandum of Law in Support by Defendant David Pope (Doc. No. 43, filed Nov. 2, 2009);

4. Notice of Correction of Case Caption Asserted on Defendant Pope's Motion to Dismiss Count IV of Plaintiff's Amended Complaint and Memorandum of Law in Support by Defendant David Pope (Doc. No. 46, filed Nov. 2, 2009);

5. Motion to Dismiss Count III of Plaintiff's Amended Complaint as to OUC for Failure to State a Claim and Motion to Strike Punitive Damages and Memorandum

of Law in Support by Defendant Orlando Utilities Commission (Doc. No. 45, filed Nov. 2, 2009);

6. Response to Orlando Utilities Commission's Motion to Dismiss Count III of Plaintiff's Amended Complaint as to OUC for Failure to State a Claim and OUC's Motion to Strike Punitive Damages by Plaintiff Desmond Hodge (Doc. No. 48, filed Nov. 12, 2009); and

7. Response to David Pope's Motion to Dismiss Count IV of Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted by Plaintiff Desmond Hodge (Doc. No. 49, filed Nov. 12, 2009.)

**Background**

**I. Plaintiff's Allegations**[1]

This cases concerns an employment dispute between an employee, Desmond Hodge ("Hodge"), his employer, Dedicated Transport, LLC, d/b/a Baker's Transport Service of Lakeland, Inc. ("Dedicated Transport"), a contractor of Dedicated Transport, Orlando Utilities Commission ("OUC"), and a Safety Supervisor and employee of OUC, David Pope ("Pope").

On or about June 6, 2007, Defendant Dedicated Transport allegedly hired Plaintiff Hodge to drive a truck at Defendant OUC's facilities. (Doc. No. 31 ¶ 14, filed Sept. 4, 2009.) Plaintiff asserts that on July 25, 2007, Defendant Pope stopped Plaintiff while he was performing his job duties and accused him of driving his truck at an unsafe speed. (*Id.* ¶¶ 15-17.) Pope allegedly based this accusation on a small warning sign that he posted to alert truck drivers to reduce their speed in

---

[1] The facts presented here are derived from the allegations of the Amended Complaint. These facts are included only to provide context and should not be construed as findings of fact.

an area where another truck was unloading ammonia. (*Id.* ¶ 18-19.) Plaintiff Hodge maintains that he responded to Pope's accusation by telling Pope that the warning sign was placed where he could not see it. (*Id.* ¶ 20, 26.) Plaintiff asserts that Defendant Pope then called security to "throw" Plaintiff off OUC's premises, stated "all you blacks are alike," and made a knowingly false complaint to OUC management. (*Id.* ¶¶ 21-22, 25.) In the complaint to OUC management, Pope allegedly accused Plaintiff of knowingly driving too fast and failing to abide by Pope's warning sign. (*Id.* ¶ 25.) Plaintiff claims that Pope made the false complaint out of racial animus or a desire to obtain revenge against Plaintiff Hodge for disputing Pope's accusations and for the purpose of causing Plaintiff to be terminated. (*Id.* ¶ 28.) Plaintiff also asserts that he was afforded no opportunity to explain his version of the events to OUC's security officers or management. (*Id.* ¶¶ 24, 30.)

Within one day of this incident, OUC supervisors and management notified Dedicated Transport that Plaintiff would no longer be allowed to work at OUC facilities. (*Id.* ¶ 31.) Plaintiff maintains that OUC based its decision to notify Dedicated Transport solely on Pope's false complaint to OUC management. (*Id.* ¶ 29.) Plaintiff further asserts that Dedicated Transport terminated Plaintiff Hodge's employment because of Defendant Pope's complaint, even though Plaintiff explained to Dedicated Transport that Pope's complaint was untruthful and racially motivated. (*Id.* ¶¶ 39-40.)

**II. Procedural History**

Plaintiff Hodge initially filed a four-count complaint alleging (1) a violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, by Defendants OUC and Baker's Transport Service of Lakeland, Inc. ("Baker's Transport") for racial discrimination in the workplace; (2) intentional

interference with Plaintiff's employment contract with Baker's Transport in violation of 42 U.S.C. § 1981 by Defendants Baker's Transport and OUC; (3) tortious interference with Plaintiff's employment contract with Baker's Transport by Defendant OUC; and (4) tortious interference with Plaintiff's employment contract with Baker's Transport by Defendant Pope. (Doc. No. 1, filed June 19, 2009.) Defendant Pope moved to dismiss Count IV of the Complaint against him for failure to state a claim upon which relief could be granted. (Doc. No. 13, filed July 20, 2009.) The Court granted the motion and dismissed Count IV without prejudice. (Doc. No. 27, filed Aug. 28, 2009.) Thereafter, Defendant OUC filed an Answer and Affirmative Defenses to the Complaint and moved to dismiss Count III. (Doc. Nos. 28, 29, filed Sept. 1, 2009.)

Prior to filing a response to OUC's Motion to Dismiss Count III of the Original Complaint (Doc. No. 33, filed Sept. 11, 2009), Plaintiff Hodge filed an Amended Complaint asserting the same four causes of action as the initial Complaint. (Doc. No. 31, filed Sept. 4, 2009.) The Amended Complaint differed from the original Complaint in three respects: (1) Defendant Dedicated Transport was substituted for Defendant Baker's Transport in each Count; (2) punitive damages were requested against Defendants OUC and Baker in Counts III and IV; and (3) additional facts were alleged in Count I and are incorporated into the remaining three Counts. (*Id.*) Defendant Pope then moved to dismiss Count IV of the Amended Complaint. (Doc. No. 35.) Defendant OUC moved to strike the Amended Complaint, arguing that Plaintiff improperly amended Counts I - III and substituted a party without leave of court. (Doc. No. 34.) Plaintiff Hodge responded in opposition to these Motions and moved to amend the Complaint and substitute Defendant Dedicated Transport for Defendant Baker's Transport. (Doc. Nos. 36, 37, 38.)

The Court entered an Order granting as unopposed Plaintiff's Motion to Amend, allowing Plaintiff to retroactively amend the complaint and substitute Defendant Dedicated Transport for Defendant Baker's Transport. (Doc. No. 42 at 2.) In that same Order, the Court denied as moot the Motion to Dismiss Count III of the Original Complaint by Defendant OUC and granted leave to Defendant OUC to file a Motion to Dismiss Count III of the Amended Complaint.[2] (*Id.*)

Defendant OUC timely filed a Motion to Dismiss Count III of the Amended Complaint and to Strike Punitive Damages. (Doc. No. 45.) Defendant Pope filed a second Motion to Dismiss Count IV of the Amended Complaint and a notice to correct the caption of such Motion. (Doc. Nos. 43, 46.) Plaintiff Hodge filed responses opposing both Motions. (Doc. Nos. 48, 49.)

**Standard of Review**

**I. Motion to Dismiss**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v.*

---

[2] Defendant Pope's Motion to Dismiss Count IV of the Amended Complaint (Doc. No. 35), unlike the Motion to Dismiss Count III by Defendant OUC, concerned the Amended Complaint, not the original Complaint. Because the Court retroactively granted Plaintiff Hodge leave to file the Amended Complaint (Doc. No. 42 at 2), it was unnecessary for Defendant Pope to file a second Motion to Dismiss Count IV of the Amended Complaint. (Doc. No. 43.) The Court's previous Order (Doc. No. 42) was ambiguous, however, for failing to state why it did not grant Defendant Pope leave to file a second Motion to Dismiss Count IV of the Amended Complaint. In any case, no party has claimed prejudice from this ambiguity or the filing of two Motions to Dismiss Count IV, and Plaintiff has filed responses opposing both pending Motions to Dismiss Count IV. (Doc. Nos. 37, 49.) Thus, in the interest of justice and completeness, the Court will consider the arguments made on both Motions to Dismiss Count IV of the Amended Complaint by Defendant Pope (Doc. Nos. 35, 43) and Plaintiff Hodge's responses thereto. (Doc. Nos. 37, 49.)

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (internal citations and quotations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## II. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court may, on its own motion or by motion of a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). It is not intended to "procure the dismissal of all or part of a complaint." *Rockholt v. United Van Lines*, 697 F. Supp. 383, 386 (D. Idaho 1988) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (1969)). However, a prayer for relief not available under the applicable law is properly subject to a motion to strike. *See* 2 Moore's Federal Practice ¶ 12.37[3] (3d ed. 2009) ("[M]otions to strike requests for certain types of relief, such as punitive or compensatory damages, are generally granted if such relief is not recoverable under the applicable law.").

**Analysis**

## I. Sufficiency of the Facts Pled in Counts III and IV

Defendants OUC and Pope moved to dismiss the claims against them for tortious interference with a contract in Counts III and IV, respectively, for failure to state a claim upon which relief can be granted. (Doc. Nos. 35, 43, 45.) To sufficiently plead a claim, Plaintiff Hodge must allege facts which plausibly establish each element of the cause of action. *See Iqbal*, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"(quoting *Twombly*, 550 U.S. at 570)). The elements of tortious interference with a contract are (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional and unjustified procurement of its breach; and (4) damages.

*Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002); *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th DCA 1999). The element of intentional and unjustified interference requires proof both that the interferor intended to interfere with a contract and that the interferor's interference proximately caused a breach of the contract. *See Chicago Title Ins. Co.*, 832 So. 2d at 814 ("[W]ithin these elements is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages. In considering the element of causation, Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship.") (internal citations omitted); *Farah*, 740 So. 2d at 561 ("[I]n order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract by influencing, inducing or coercing one of the parties to . . . breach the contract, thereby causing injury to the other party."); *id.* ("[I]n an action for procuring the breach of a contract, the defendant may not be held liable where it is found that the breach by the party to the contract rather then the persuasion by the defendant was the proximate cause of the plaintiff's damage.") (quoting 45 Am. Jur. 2d *Interference* § 10 (1999)).

Therefore, Plaintiff must plead facts against the respective defendant in Counts III and IV which plausibly show that (1) an employment contract existed between Hodge and Dedicated Transport; (2) the defendant knew of Hodge's employment contract with Baker's Transport; (3) the defendant intended to interfere with the contract; (4) the defendant's interference proximately caused Baker's Transport to terminate Hodge's employment; and (5) Hodge was damaged by the termination of his employment. *Iqbal*, 129 S. Ct. at 1949; *Chicago Title Ins. Co.*, 832 So. 2d at 814; *Farah*, 740 So. 2d at 561.

**A. Existence of an Employment Contract Between Hodge and Dedicated Transport**

Plaintiff sufficiently pleads the first element of the cause of action, the existence of his employment contract with Dedicated Transport, by alleging that he was hired by Dedicated Transport and assigned to drive a truck at OUC's facilities pursuant to Dedicated Transport's contract with OUC. (Doc. No. 31 ¶ 14.) This allegation is incorporated by reference into both Counts III and IV, and thus the existence of an employment contract is sufficiently pled in both counts.[3]

**B. Knowledge of Hodge's Employment Contract with Dedicated Transport**

The Court previously held that the second element, knowledge of the employment contract, was plausibly established by the allegation that Pope made false statements regarding Hodge's work performance for the purpose of interfering with Hodge's employment contract. (Doc. No. 27 at 6.) Applying this reasoning to identical provisions found in both Counts III and IV of the Amended Complaint, knowledge of Hodge's employment contract is plausibly established in both counts. (Doc. No. 31 ¶¶ 70, 75.)

**C. Intentional Interference with Hodge's Employment Contract**

The legal standard for intentional interference with an employment contract depends upon whether the employment is at-will. If the employment is at-will, Plaintiff must allege facts which plausibly establish not only intentional interference, but also that the interferor possessed a purely malicious interest and no legitimate competitive economic interest. *Heavener, Ogier Servs., Inc. v. R.W. Fla. Region, Inc.*, 418 So. 2d 1074, 1076-77 (Fla. 5th DCA 1982). Plaintiff does not assert

---

[3] Paragraphs 1-46 of the Amended Complaint are incorporated into Counts III and IV by reference. (*Id.* at 12-13.)

in the Amended Complaint whether Plaintiff's employment contract is at-will, and this Court cannot look beyond the four corners of the Amended Complaint for additional information. *Tellabs, Inc.*, 551 U.S. at 323. In any case, Plaintiff sufficiently pleads the element of intentional interference, because Plaintiff alleges facts which plausibly establish intentional interference under the more rigorous at-will standard. Plaintiff alleges that OUC and Pope intentionally made false statements concerning Plaintiff's performance of work with malice and to interfere with Plaintiff's contract. (Doc. No. 31 ¶¶ 70, 75.) The Court previously ruled that identical provisions in the original Complaint plausibly established both malice and the absence of any legitimate competitive economic interest by Defendant Pope. (Doc. No. 27 at 9-10.) Applying that reasoning to the Amended Complaint, Plaintiff has pled facts which plausibly establish intentionally interference with his employment contract by Defendants OUC and Pope.[4]

### D. Proximate Causation

Plaintiff must plead facts which plausibly establish that each defendant's intentional interference with his employment contract proximately caused him to be terminated. Plaintiff satisfies proximate causation in both Counts III and IV by alleging that Defendant Pope's statements were the sole reason that OUC barred Plaintiff from its facilities and that Dedicated Transport terminated Plaintiff's employment because OUC barred Plaintiff from its facilities. (Doc. No. 31 ¶ 29, 42.)

---

[4] OUC argues that Plaintiff did not sufficiently plead intentional interference because he alleged that OUC made false statements but failed to allege any particular statements by OUC which were in fact false. (Doc. No. 45 at 6.) There is no requirement that Plaintiff plead precisely what OUC told Dedicated Transport because the making of false statements is not an element of tortious interference with a contract. The fact that OUC is alleged to have intentionally made false statements, by itself, satisfies the third element under the *Iqbal* plausibility standard.

### E. Damages Due to Termination of Plaintiff's Employment

Plaintiff's assertion that because of the aforementioned actions, his employment was terminated and he suffered damages in the form of past and future lost wages plausibly establishes damages. (Doc. No. 31 ¶ 44.) Accordingly, each element of Counts III and IV is well-pled.

## II. Legal Sufficiency of the Punitive Damage Claims against Defendant OUC

Plaintiff Hodge requests that punitive damages be awarded against Defendant OUC in each of Counts I - III. (Doc. No. 31 at 8, 12, 13.) OUC argues that such punitive damages requests should be stricken because punitive damages cannot be awarded against OUC on these claims as a matter of law. (Doc. No. 45 at 10.)

### A. Count I: Punitive Damages for Violations of Title VII by OUC

Defendant OUC argues that Plaintiff Hodge cannot seek punitive damages under Title VII, 42 U.S.C. § 2000e, et seq., because punitive damages may not be assessed against a government agency under that statute, and OUC is a government agency. (Doc. No. 45 at 10-12.) Plaintiff Hodge argues in response that there is no caselaw indicating whether OUC is a government agency as a matter of law and that the Court should not strike Plaintiff's request for punitive damages at this stage of the pleadings. (Doc. No. 48 at 11.)

> Punitive damages may be recovered for a violation of 42 U.S.C. § 2000e against:
>
> a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1) (2009). Therefore, the issue is whether OUC is a "government, government agency, or political subdivision." These terms are not defined by the statute or the caselaw,[5] and the legislative history merely expresses Congress' intent that punitive damages not be awarded against "federal, state and local government agencies." 137 Cong. Rec. S15484, 1991 WL 221703 (daily ed. Oct. 30, 1991) (Sponsors' Interpretative Memorandum on Issues Other Than Wards Cove - Business Necessity / Cumulation / Alternative Business Practice). Plaintiff correctly notes that no case has precisely defined OUC's status or held that OUC is a "government, government agency, or political subdivision" (Doc. No. 48 at 10-11); however, the law is clear that no punitive damages should be awarded against OUC.

Although federal law determines whether OUC is a "government agency" under Section 1981a(b)(1), this Court may look to state law in order to understand OUC's organization and structure as it relates to state and local government. *See Morley v. N.C. Dep't of Health & Human Servs.*, 171 F. Supp. 2d 585, 591 (W.D.N.C. 2001) (holding that the hospital at issue was a "government agency" and thus exempt from punitive damages under Section 1981a(b)(1) in light of a state statute defining the hospital as a "state facility"); *Hodoh-Drummond v. Summit County*,

---

[5] The Court has found only one case addressing whether a local utility was exempt from punitive damages under Title VII pursuant to Section 1981a(b)(1), but the reasoning in that case was not helpful. In *Poe v. Memphis Light, Gas and Water Div.*, 201 F.3d 441 (Table), 1999 WL 1204694 (6th Cir. Nov. 30, 1999), the Sixth Circuit Court of Appeals held that "Memphis LG&W, a public utility, is a division of the city of Memphis and a governmental agency." *Id.* at *3. This holding was not further explained, and thus it is unclear whether Memphis LG&W was classified as a government agency due to its status as a public utility, its status as a division of the City of Memphis, or both. Like Memphis LG&W, OUC is a "public utility." *See* (Doc. No. 31 ¶ 2); *Gaines v. City of Orlando*, 450 So. 2d 1174, 1182 (Fla. 5th DCA 1984) ("The OUC . . . is a public utility."). Unlike Memphis LG&W, however, OUC is not a division of the City of Orlando. *See Lederer v. Orlando Utils. Comm'n*, 981 So. 2d 521, 526 (Fla. 5th DCA 2008) ("OUC is not a municipality or a municipal department . . . .").

84 F. Supp. 2d 874, 885 (N.D. Ohio 2000) (citing the state statute defining political subdivision in holding that the county at issue was a political subdivision and thus exempt from punitive damages under Section 1981a(b)(1)); *McClenney v. Campbellton Graceville Hosp.*, No. 5:98cv125-SPM, 1999 WL 334772 (N.D. Fla. Feb. 25, 1999) (citing Section 1.01(8), Florida Statutes (1998), and the acts of the Florida Legislature establishing the hospital at issue for the proposition that the hospital was a political subdivision and thus exempt from punitive damages pursuant to Section 1981a(b)(1)); *see also N.L.R.B. v. Nat. Gas Util. Dist. of Hawkins County, Tenn.*, 402 U.S. 600, 604-08 (1971) (looking to state law to determine, as a matter of federal law, whether the entity at issue was a "political subdivision" under a federal statute that did not define the term); *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 465 (5th Cir. 2001) ("Federal law controls whether a person is an employer under Title VII, but courts can look to state law to understand the nature of the employment relationship.").

The Florida Legislature has absolute discretion to grant powers to operate and manage city utilities to an independent utility commission outside the city's control, and in doing so, the Legislature creates "a *municipal agency*[6] to operate publicly owned property for the benefit of the public." *Lederer v. Orlando Utils. Comm'n*, 981 So. 2d 521, 525 (Fla. 5th DCA 2008) (quoting *Cobo v. O'Bryant*, 116 So. 2d 233, 237 (Fla. 1959)) (emphasis added). Although this is an issue of

---

[6] A "municipal agency" is a separate legal entity from the municipality, whereas a "municipal department" is not a separate legal entity and does not have the capacity to sue and be sued apart from the city. *Lederer*, 981 So. 2d at 525-26.

first impression,[7] the special acts of the Florida Legislature empowering OUC to produce and distribute utilities to the City of Orlando persuade the Court that OUC is a municipal agency.

OUC was established by special act of the Florida Legislature in 1923 "as a part of the government of the City of Orlando" but with "substantial autonomy to operate independently from the City Government." *Gaines v. City of Orlando*, 450 So. 2d 1174, 1180 (Fla. 5th DCA 1984) (citing 1923 Fla. Laws Ch. 9861). In other words, "[w]hile the OUC is part of the City for some purposes, it is independent and beyond the control of the City as to the powers granted to it under the special act[s]." *Lederer*, 981 So. 2d at 524. Such independent powers granted by special acts include "full authority over the management and control of the electric light and water works plant of the City of Orlando," *id.* (quoting 1955 Fla. Laws, Ch. 31092, § 1), and "the authority to acquire, establish, construct, maintain and/or operate electric generating plants within the boundaries of Orange county . . . ." *Gaines*, 450 So. 2d at 1181 (quoting 1961 Fla. Laws, Ch. 61-2589, § 9). OUC also has the authority to "prescribe rates, rules and regulations governing the sale and use of electricity, power and water wherever furnished by [OUC] and to change the same at its pleasure." *Lederer*, 981 So. 2d at 524 (quoting 1955 Fla. Laws, Ch. 31077, § 1). Further, OUC may borrow money, incur debt, issue notes, bill for services, and discontinue services do to nonpayment. *Lederer*, 981 So. 2d at 524; *see also id.* (collecting a comprehensive list of powers granted to OUC by special act).

Because the Florida Legislature granted OUC authority independent of the City of Orlando to manage and operate city utilities, OUC should be classified as a municipal agency. *Lederer*, 981

---

[7] The court in *Lederer* resolved the issues before it without determining whether OUC was a "municipal agency." *Lederer*, 981 So. 2d at 526; *see also infra* part III.C (discussing the holding in *Lederer*).

So. 2d at 525; *Cobo*, 116 So. 2d at 237. In light of the legislative intent to exempt local government agencies from punitive damages under Section 1981a(b)(1), Defendant OUC is exempt from punitive damages under Title VII, and Plaintiff Hodge's prayer for punitive damages in Count I should be stricken.

### B. Count II: Punitive Damages for Tortious Interference with Plaintiff's Employment Contract by OUC in violation of 42 U.S.C. § 1981

Defendant OUC asserts that Section 1981a(b)(1), which exempted OUC from punitive damages on Plaintiff's Title VII claim, also exempts OUC from punitive damages on Plaintiff's claim for intentional interference with Plaintiff's employment contract in violation of 42 U.S.C. § 1981. (Doc. No. 45 at 10.) OUC's argument overlooks 42 U.S.C. § 1981a(b)(4), which specifically provides that Section 1981(a) shall not be construed to limit the scope of, or the relief available under, 42 U.S.C. § 1981. *See Johnson v. Metro. Sewer Dist.*, 926 F. Supp. 874, 876 (E.D. Mo. 1996) (noting that pursuant to Section 1981a(b)(4), Section 1981a(b)(1) has no effect on the damages recoverable under Section 1981); 137 Cong. Rec. S15484 (daily ed. Oct. 30, 1991) ("Section 1977A(b)(4) (42 U.S.C. section 1981a(b)(4)) makes clear that nothing in section 1977A should be construed to limit the scope of, or the relief available under, section 1977 of the Revised Statutes, 42 U.S.C. [§] 1981."). Thus, OUC cannot rely upon Section 1981a(b)(1) to strike Plaintiff's request for punitive damages based on OUC's alleged violation of Section 1981.

However, OUC is exempt from punitive damages under Section 1981 because the purposes of punitive damages, punishment and deterrence, are not served by assessing punitive damages against a public utility which exists to serve the public good. In *Walters v. City of Atlanta*, 803 F.2d 1135 (11th Cir. 1986), the Eleventh Circuit held that municipalities were exempt from punitive

damages under Section 1981. *Id.* at 1148. In so holding, the panel adopted the reasoning of the Supreme Court in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), which held that municipalities were immune from punitive damages under Section 1983. *Walters*, 803 F.3d at 1148. The court in *Walters* reasoned that "municipal liability for punitive damages awards would punish innocent taxpayers, not actual wrongdoers, and therefore considerations of public policy militated against expanding punitive damages liability to encompass municipalities." *Id.* Similarly, the Supreme Court in *Newport* concluded that the threat of punitive damages against a municipality did not serve the intended purposes of punishment and deterrence:

> [P]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrong action was intentional or malicious and to deter others from similar extreme conduct . . . . [A]n award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort . . . . These damages are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.

*Newport*, 453 U.S. at 266-67.

Other district courts have applied the reasoning of *Walters* and *Newport* beyond municipalities in holding that punitive damages for a violation of Section 1981 could not be recovered against a municipal housing authority created by state law, *Fauser v. Memphis Hous. Auth.*, 780 F. Supp. 1168, 1176 (W.D. Tenn. 1991), a hospital classified as a "public benefit corporation" under state law, *Tanvir v. Laporte*, No. 93-cv-6923, 1997 WL 473084 (S.D.N.Y. June 13, 1997), a municipal water district, *Heritage Homes of Attleboro, Inc. v. Seekonk Water Dist.*, 670 F.2d 1, 4 (1st Cir. 1982), a community college, *Zewde v. Elgin Community College*, 601 F. Supp.

1237, 1248 (D.C. Ill. 1984), and a municipal transit district, *Ferguson v. Joliet Mass Transit Dist.*, 526 F. Supp. 222, 226 (D.C. Ill. 1981).

The reasoning of *Walters* and *Newport* adopted by other lower courts to immunize state and local government agencies from punitive damages under Section 1981 also applies to OUC. As a public utility,[8] OUC, like the municipalities in *Walters* and *Newport*, the housing authority in *Fauser*, the hospital in *Tanvir*, the municipal water district in *Seekonk*, the community college in *Zewde*, and the transit district in *Ferguson*, is charged with providing services to a vast number of persons for the public good. *See Ford v. Orlando Utils. Comm'n*, 629 So. 2d 845, 847 (Fla. 1988) (holding that the production of electricity by OUC is a "municipal purpose" and thus OUC's power plant properties are exempt from ad valorem taxes under the state constitution); *Gaines*, 450 So. 2d at 1181 (noting that the OUC is "part of the government of the City of Orlando, Florida," has "full power and authority to prescribe rules, rates, and regulations governing the sale and use of electricity," "full authority over the management and control of the electric light . . . plants of the City of Orlando," and authority "to acquire, establish, construct, maintain and/or operate electric generating plants within the boundaries of Orange county and Brevard county."); *Lederer*, 981 So. 2d at 524 (noting that OUC has the authority to exercise the right of eminent domain and to "prescribe rates, rules and regulations governing the sale and use of electricity, power and water wherever furnished by [OUC] and to change the same at its pleasure.") (internal citations omitted); *supra* part II.A (holding that OUC was a municipal agency that operated publicly owned property for the benefit of the public) (citing *Lederer*, 981 So. 2d at 525). As recognized by the Supreme Court in *Newport*, assessing punitive damages against an entity providing for the public welfare like

---

[8] Plaintiff alleges that OUC is a public utility. (Doc. No. 31 ¶ 2.)

-17-

OUC would frustrate its public purpose and reduce the quality of services provided to the innocent public. *Newport*, 453 U.S. at 266-67.

Finding no authority contrary to the reasoning stated above, and Plaintiff having offered no contrary authority, OUC must be found to be immune from punitive damages for the alleged violation of Section 1981, and Plaintiff's prayer for punitive damages in Count II will be stricken.

### C. Count III: Punitive Damages for Tortious Interference with Plaintiff's Employment Contract by OUC in violation of Florida Common Law

Defendant OUC maintains that Plaintiff's request for punitive damages in Count III should be stricken because OUC is exempt from punitive damages under state law. (Doc. No. 45 at 10.) Section 768.28(5), Florida Statutes (2009), provides that "[t]he state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages . . . ." Thus, the Court must determine whether OUC is a "state agency or subdivision," which includes:

> the executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including state university boards of trustees; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities, including the Florida Space Authority.

§ 768.28(2), Fla. Stat.

No court has explicitly held that OUC is a "state agency or subdivision" and therefore exempt from punitive damages under Section 768.28(5). The term "state agency or subdivision," however, has the same meaning in each subsection of Section 768.28. *See* § 768.28(2), Fla. Stat. ("As used in this act, "state agencies or subdivisions" include . . . ."). Therefore, cases discussing

whether OUC is a "state agency or subdivision" in the context of other subsections of Section 768.28 shed light on whether OUC is exempt from punitive damages under Section 768.28(5).

Section 768.28(6) requires plaintiffs suing a "state agency or subdivision" to provide presuit notice to the Department of Financial Services, unless the defendant is a municipality or the Florida Space Authority:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing . . . .

In *Lederer*, the Fifth District Court of Appeals held that OUC was not a "municipality," and thus the plaintiff should have given written notice to the Department of Financial Services before filing suit against OUC pursuant to Section 768.28(6). *Lederer*, 981 So. 2d at 526. Because the plaintiff in *Lederer* did not give proper presuit notice to the Department of Financial Services, the Fifth District Court of Appeals affirmed summary judgment for OUC and against the plaintiff. *Id.* If OUC is not a municipality or the Florida Space Authority and if plaintiffs suing OUC are subject to the presuit notice requirement imposed by Section 768.28(6), then OUC must fall within the definition of "state agency or subdivision" in Section 768.28(2). Thus, OUC is exempt from punitive damages pursuant to Section 768.28(5), and Plaintiff Hodge's request for punitive damages against Defendant OUC in Count III should be stricken.

## Conclusion

Based on the foregoing, the Motion to Dismiss Complaint (sic) Count IV of Plaintiff's Complaint and Memorandum of Law in Support by Defendant David Pope (Doc. No. 35) and the

Motion to Dismiss Count IV of Plaintiff's Amended Complaint and Memorandum of Law in Support by Defendant David Pope (Doc. No. 43) are **DENIED**.

The Motion to Dismiss Count III of Plaintiff's Amended Complaint as to OUC for Failure to State a Claim and Motion to Strike Punitive Damages and Memorandum of Law in Support by Defendant OUC (Doc. No. 45) is **GRANTED in part and DENIED in part**. Plaintiff's demands for punitive damages against Defendant OUC in Counts I, II, and III are **STRICKEN**. The Motion is denied in all other respects.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on November 23, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record